## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Case No. _____ |
| SEALED SEARCH WARRANT | |

## MEMORANDUM OF LAW IN SUPPORT OF THE PRESS MOVANTS' MOTION TO INTERVENE AND UNSEAL SEARCH WARRANT RECORDS

On August 22, 2025, FBI agents executed a search warrant at the home of John Bolton, a former National Security Advisor to President Trump who has become one of the President's fiercest critics. Fifteen news organizations that reported on the search (the "Press Movants") now respectfully move to intervene in this matter for the limited purpose of seeking to unseal the search warrant and related filings (the "Search Warrant Records").[1] Specifically, Press Movants seek access to: (1) the search warrant and all attachments; (2) the warrant application; (3) all probable cause affidavits filed in support of the warrant application; (4) any motion to seal the warrant-related records; (5) any order sealing the warrant-related records; (6) any warrant return; and (7) any other records filed with this Court in connection with the search warrant.

These Search Warrant Records are judicial records subject to the common law right of access, and the tremendous public interest in these records outweighs any potential interest in their continued secrecy. The Court should grant this motion, promptly unseal the Search Warrant Records, and ensure that this matter proceeds with maximum transparency.

---

[1] Press Movants are The New York Times Company, Advance Publications, Inc., American Broadcasting Companies, Inc. d/b/a ABC News, The Associated Press, Axios Media Inc., Bloomberg L.P., Cable News Network, Inc., Dow Jones & Company, Inc., publisher of The Wall Street Journal, National Public Radio, Inc., NBCUniversal Media, LLC d/b/a NBCUniversal News Group, NOTUS (Allbritton Journalism Institute), POLITICO LLC, Reuters News & Media Inc., WP Company LLC d/b/a The Washington Post, and WUSA-TV.

## FACTUAL BACKGROUND

John Bolton has worked as an attorney and diplomat at multiple levels of the federal government across several presidential administrations. A graduate of Yale University and Yale Law School, Bolton began his federal service in the Reagan Administration—first at the U.S. Agency for International Development and then as an Assistant Attorney General at the Department of Justice—before joining the State Department under President George H.W. Bush and again under President George W. Bush.[2] In August 2005, Bolton was appointed as U.S. Ambassador to the United Nations, a position he held until December 2006.[3]

Bolton served as President Donald Trump's third National Security Advisor during his first term.[4] In that position, Bolton and President Trump publicly disagreed about many significant foreign policy issues. For example, Bolton supported a regime change in Iran, while Trump said he did not.[5] Bolton also claimed that North Korean missile tests in 2019 violated United Nations resolutions, while Trump said he "view[ed] it differently."[6]

---

[2] Conor Finnegan, *Everything you need to know about John Bolton, Trump's former national security adviser,* ABC News (June 21, 2020), https://abcnews.go.com/Politics/john-bolton-trumps-expected-pick-deputy-secretary-state/story?id=44146193 .

[3] *U.N. Ambassador John Bolton to Step Down*, CBS News (Dec. 4, 2006), https://www.cbsnews.com/news/un-ambassador-john-bolton-to-step-down/.

[4] Mark Landler & Maggie Haberman, *Trump Chooses Bolton for 3rd Security Adviser as Shake-Up Continues*, N.Y. Times (March 22, 2018), https://www.nytimes.com/2018/03/22/us/politics/hr-mcmaster-trump-bolton.html.

[5] Peter Baker & Maggie Haberman, *Trump Undercuts Bolton on North Korea and Iran*, N.Y. Times (May 28, 2019), https://www.nytimes.com/2019/05/28/us/politics/trump-john-bolton-north-korea-iran.html.

[6] *Id.; see also* Motoko Rich, *John Bolton Says North Korean Missile Tests Violated U.N. Resolutions,* N.Y. Times (May 24, 2019), https://www.nytimes.com/2019/05/24/world/asia/john-bolton-north-korea.html; *see also* @realDonaldTrump, X (May 25, 2019 9:32 PM), https://x.com/realDonaldTrump/status/1132459370816708608.

2

Bolton's tenure as National Security Advisor concluded in September 2019, and accounts differed as to whether Bolton resigned or was fired.[7] It is undisputed, however, that Bolton became a vocal critic of Trump after leaving the administration.[8] In January 2020, for example, the press reported that, according to Bolton, Trump told Bolton in August 2019 that Trump wanted to withhold aid from Ukraine until officials there pursued investigations into Democrats, including the Biden family.[9] This report became public during the impeachment inquiry into allegations that Trump had pursued this type of quid-pro-quo arrangement. *Id.* Trump denied Bolton's alleged version of events. *Id.*

The Trump administration subsequently objected to the publication of Bolton's memoir, claiming that the book contained classified information that needed to be removed prior to publication.[10] Bolton disagreed, stating that the book did not contain any sensitive information. *Id.* The Department of Justice sued to stop publication, but the effort was unsuccessful and Bolton's book, titled *The Room Where It Happened: A White House Memoir*, was published in

---

[7] Shannon Pettypiece et al., *Trump fires John Bolton as national security adviser*, NBC News (Sept. 10, 2019), https://www.nbcnews.com/politics/donald-trump/trump-fires-national-security-adviser-john-bolton-n1051986.

[8] *See, e.g.,* Josh Wingrove, *Bolton Says Trump Aids Foes With Disarray on Russia Bounty News*, Bloomberg (July 1, 2020), https://www.bloomberg.com/news/articles/2020-07-01/bolton-declines-to-say-if-he-briefed-trump-on-russia-bounties?sref=XQyF66PX.

[9] Maggie Haberman & Michael S. Schmidt, *Trump Tied Ukraine Aid to Inquiries He Sought, Bolton Book Says,* N.Y. Times (Jan. 26, 2020), https://www.nytimes.com/2020/01/26/us/politics/trump-bolton-book-ukraine.html.

[10] Hallie Jackson & Allan Smith, *White House objects to publication of Bolton's book, demands classified info be removed first,* NBC News (Jan. 29, 2020), https://www.nbcnews.com/politics/trump-impeachment-inquiry/white-house-seeks-block-publication-bolton-s-book-demands-classified-n1125666.

3

June 2020.[11] Bolton's book described his perspective on his 17 months as National Security Advisor, and he generally characterized Trump negatively.[12] The book also contained Bolton's account of Trump withholding aid from Ukraine unless Ukraine agreed to investigate alleged wrongdoing by Democrats, including Joseph Biden. *Id.*

Trump denied Bolton's version of events, calling it "a compilation of lies and made up stories, all intended to make me look bad."[13] Trump maintained that Bolton had broken the law by publishing classified information, asserting that he "should be in jail, money seized, for disseminating, for profit, highly Classified information."[14] In September 2020, the Justice Department opened a criminal investigation into whether Bolton unlawfully disclosed classified information in his memoir.[15] The Justice Department closed the investigation in June 2021.[16]

Early in his second term, Trump revoked Bolton's security clearance and cancelled his security detail, which had been assigned to Bolton due to threats against him from Iran.[17] Bolton

---

[11] Katelyn Polantz, *Federal judge denies Trump administration's attempt to block release of Bolton's book*, CNN (June 20, 2020), https://www.cnn.com/2020/06/20/politics/judge-john-bolton-book.

[12] Peter Baker, *Five Takeaways From John Bolton's Memoir*, N.Y. Times (June 18, 2020), https://www.nytimes.com/2020/06/18/us/politics/john-bolton-memoir-takeaways.html.

[13] @realDonaldTrump, X (June 18, 2020 9:08 AM), https://x.com/realdonaldtrump/status/1273603410340843520

[14] @realDonaldTrump, X (June 22, 2020 12:39 AM), https://x.com/realdonaldtrump/status/1275287274213777413; @realDonaldTrump, X (June 23, 2020 6:28 AM), https://x.com/realDonaldTrump/status/1275375135483146241

[15] Katie Benner, *Justice Dept. Opens Criminal Inquiry Into John Bolton's Book*, N.Y. Times (Sept. 24, 2020), https://www.nytimes.com/2020/09/15/us/politics/john-bolton-book-criminal-investigation.html.

[16] Michael S. Schmidt & Katie Benner, *Justice Dept. Ends Criminal Inquiry and Lawsuit on John Bolton's Book*, N.Y. Times (June 16, 2021), https://www.nytimes.com/2021/06/16/us/politics/john-bolton-book-justice-department.html.

[17] John Sakellariadis, *Trump ends John Bolton's security detail*, Politico (Jan. 21, 2025), https://www.politico.com/news/2025/01/21/trump-bolton-security-detail-00199751.

continued to publicly criticize Trump during his second term, publishing opinion columns in The Wall Street Journal and appearing as a political commentator on various news outlets.[18]  In a media appearance on August 10, 2025, for example, Bolton criticized Trump's decision to invite Russian President Vladimir Putin to Alaska and questioned Trump's strategy on peace talks.[19]

At approximately 7:00 a.m. on August 22, 2025, FBI agents conducted a search of Bolton's home in Bethesda, Maryland and his office in Washington, DC.[20]  The search was reportedly related to an investigation into the potential mishandling of classified information. *Id.* In quick succession, several Trump administration officials appeared to publicly acknowledge the search.  At 7:03 a.m., FBI Director Kash Patel posted online, "NO ONE is above the law… @FBI agents on mission."[21]  At 7:16 a.m., Deputy FBI Director Dan Bongino responded to

---

[18] *See, e.g.,* John Bolton, *Chaos Is Embedded in Trump's DNA*, WSJ (May 1, 2025), https://www.wsj.com/opinion/chaos-is-embedded-in-trumps-dna-foreign-policy-0511581f; CNN, *Bolton: 'Trump did not lose, but Putin clearly won'*, YouTube (Aug, 15, 2025), https://www.youtube.com/watch?v=EY9mwuIMFKM; Alex Nitzberg, *John Bolton declares hiking US defense budget the 'most important priority in foreign affairs today'*, FOX News (Dec. 3, 2024), https://www.foxnews.com/politics/john-bolton-declares-hiking-us-defense-budget-most-important-priority-foreign-affairs-today.

[19] Alexandra Hutzler, *A look at Donald Trump and John Bolton's yearslong tumultuous relationship*, ABC News (Aug. 22, 2025), https://abcnews.go.com/Politics/donald-trump-john-boltons-yearslong-tumultuous-relationship/story?id=124885239.

[20] Eric Tucker, *FBI searches home and office of ex-Trump national security adviser John Bolton*, Associated Press (Aug. 22, 2025), https://apnews.com/article/trump-fbi-bolton-patel-records-home-search-d02cca9e51360115262727ce45be3d65; Isabelle Khurshudyan, *'Militarization of politics': How bucolic Bethesda woke up to FBI search on John Bolton*, CNN (Aug. 22, 2025), https://www.cnn.com/2025/08/22/politics/how-bethesda-woke-up-to-fbi-raid-on-john-bolton; Myles Miller, *FBI Searches Home of Trump Adviser Turned Critic John Bolton*, Bloomberg (Aug. 22, 2025), https://www.bloomberg.com/news/articles/2025-08-22/fbi-searches-home-of-trump-critic-bolton-over-documents-probe?sref=XQyF66PX.

[21] Kash Patel, X (Aug. 22, 2025, 7:03 AM), https://x.com/FBIDirectorKash/status/1958847495028584529.

Patel's post, writing that "Public corruption will not be tolerated."[22]   At 7:45 a.m., Attorney

General Pam Bondi further responded, "America's safety isn't negotiable. Justice will be

pursued."[23]

**ARGUMENT**

The public has a common law right of access to search warrant materials, and the need to

vindicate this access right is particularly urgent here given the powerful interest in evaluating the

government's request to search the home of a prominent critic of the President and the Court's

decision to allow that search.  The right of access requires the prompt release of the Search

Warrant Records with only those narrowly limited redactions the Court deems necessary.

**I.     THE COURT SHOULD PERMIT THE PRESS MOVANTS TO INTERVENE
        FOR THE LIMITED PURPOSE OF SEEKING ACCESS TO THE SEARCH
        WARRANT RECORDS**

The Supreme Court has long held that, because there is a right of access to judicial

records, "representatives of the press and general public must be given an opportunity to be

heard on the question of their exclusion." *Globe Newspaper Co. v. Super. Ct.*, 457 U.S. 596, 609

n.25 (1982) (cleaned up).  To effectuate the Supreme Court's instruction, the Fourth Circuit has

consistently allowed members of the press and public to intervene in judicial proceedings,

including criminal cases, for the limited purpose of seeking to unseal court records. *See, e.g.*,

*United States v. Moussaoui*, 65 F. App'x 881, 884 (4th Cir. 2003) (permitting news organizations

to intervene in criminal appeal for limited purpose of seeking to unseal portions of the appellate

record and transcript of argument); *Co. Doe v. Pub. Citizen*, 749 F.3d 246, 262 (4th Cir. 2014)

---

[22] Dan Bongino, X (Aug. 22, 2025, 7:16 AM),
https://x.com/FBIDDBongino/status/1958850735321264287.

[23] Pamela Bondi, X (Aug. 22, 2025, 7:45 AM),
https://x.com/AGPamBondi/status/1958858061214371962.

6

(noting that Fourth Circuit "has previously permitted news organizations to intervene in actions in which they were not otherwise parties to challenge a district court's sealing order"); *Rosenfeld v. Montgomery Cnty. Pub. Schs.*, 25 F. App'x 123, 131 (4th Cir. 2001) ("The press has standing to intervene in actions in which it is not otherwise a party to seek review of a district court's order sealing documents and court records."); *see also, e.g.*, *Balt. Sun v. Goetz*, 886 F.2d 60, 62 (4th Cir. 1989) (reviewing denial of press's request to unseal search warrant affidavit based on an initial limited motion to intervene). This Court should follow that consistent line of authority and permit the Press Movants to intervene in this matter for the limited purpose of seeking access to the Search Warrant Records.

## II.    THE COURT SHOULD UNSEAL THE SEARCH WARRANT RECORDS

The common law right of access applies to all "judicial records," which are "documents filed with the court" that "play a role in the adjudicative process, or adjudicate substantive rights." *In re Application for an Order Pursuant to 18 U.S.C. § 2703(D)*, 707 F.3d 283, 290 (4th Cir. 2013); *see also Nixon v. Warner Commc'ns*, 435 U.S. 589, 597-98 (1978). This right extends to search warrants and supporting materials. *In re Application & Affidavit for a Search Warrant* ("*In re Search Warrant*"), 923 F.2d 324, 328 (4th Cir. 1991); *Balt. Sun*, 886 F.2d at 65.

Under this right of access, the Court may seal judicial records only when "'countervailing interests heavily outweigh the public interests in access.'" *Doe*, 749 F.3d at 265-66 (quoting *Rushford v. New Yorker Mag.*, 846 F.2d 249, 253 (4th Cir. 1988)). "The party seeking to overcome the presumption bears the burden of showing some significant interest that outweighs the presumption" of public access. *Rushford*, 846 F.2d at 253.

For search warrants in particular, the Fourth Circuit has emphasized that "the common law presumption is in favor of access," while recognizing that trial courts have discretion to determine on a case-by-case basis how best to strike the balance between the public's right of

7

access and the other values that might be served by sealing. *In re Search Warrant*, 923 F.2d at

329 (affirming release of search warrant affidavit in its entirety). Thus, while in some cases

there may be a compelling interest in keeping documents sealed to "protect[] the integrity of an

ongoing law enforcement investigation . . . not every release of information contained in an

ongoing investigation file will necessarily affect the integrity of the investigation." *Va. Dep't of

State Police v. Wash. Post*, 386 F.3d 567, 579 (4th Cir. 2004).

To justify continued sealing, the Court "must consider alternatives to sealing the

documents" and issue specific findings on the record to support its determination. *Balt. Sun*, 886

F.2d at 66. Thus, even if a party identifies a significant interest that may justify limited sealing,

the common law right of access "ordinarily involves disclosing some of the documents or giving

access to a redacted version." *Id.*

"[T]he presumption in favor of public access to court filings is especially strong where,

as here, the filings involve matters of particular concern to the public . . . ." *United States ex rel.

Permison v. Superlative Techs.*, 492 F. Supp. 2d 561, 564 (E.D. Va. 2007). Indeed, Magistrate

Judge Bruce E. Reinhart of the U.S. District Court for the Southern District of Florida weighed

similar considerations when ordering the release of redacted versions of materials related to the

search warrant executed at President Trump's Mar-a-Lago residence in August 2022. *In re

Sealed Search Warrant*, 622 F. Supp. 3d 1257, 1260-65 (S.D. Fla. 2022). There, dozens of news

organizations moved to intervene and unseal the search warrant and related papers, and the

government moved to unseal the search warrant itself, and some related materials, but opposed

unsealing the supporting affidavit. *Id.* at 1260. Magistrate Judge Reinhart unsealed the warrant

and unsealed the affidavit with redactions. *Id.* at 1260, 1265. Acknowledging that an ongoing

criminal investigation justified maintaining some information within the affidavit under seal, the

8

court found that release of a redacted version was "a less onerous alternative to sealing the entire document." *Id.* at 1265. In reaching this decision, the court "reject[ed] the Government's argument that the present record justifies keeping the entire Affidavit under seal" and placed emphasis on "the intense public and historical interest in an unprecedented search of a former President's residence." *Id.* at 1265.

Here, too, continued sealing of the Search Warrant Records is improper given the official acknowledgement of the search, as well as the public interest both in monitoring the integrity of our country's national security system and in understanding the motivations of law enforcement activity. FBI leadership and Attorney General Bondi made statements nearly contemporaneously about the search, and reporters on site observed and photographed federal agents entering Bolton's home in Bethesda. *See supra* at 5. At a minimum, therefore, any already-public information within the Search Warrant Materials should be unsealed. *Va. State Police*, 386 F.3d at 579 (affirming unsealing of materials related to a criminal investigation where "this information has already become a matter of public knowledge"); *see also Wash. Post v. Robinson*, 935 F.2d 282, 292 (D.C. Cir. 1991) (rejecting claim that disclosure of plea agreement in highly publicized case could compromise ongoing criminal investigation because disclosure "would only have confirmed to the public what was already validated by an official source" and "could hardly have posed any additional threat to the ongoing criminal investigation").

No party could possibly identify an interest in blanket sealing of the Search Warrant Records that "heavily outweigh[s] the public interests in access.'" *Doe*, 749 F.3d at 265-66. To the contrary, given the enormous public interest and historic significance of a search warrant executed against a former presidential advisor, and the Administration's acknowledgment of this search, the Search Warrant Records should be unsealed as promptly as possible, and any specific

9

grounds for sealing particular information within the Search Warrant Materials should be addressed with only narrow and limited redactions that the Court determines are necessary.

## CONCLUSION

For the foregoing reasons, the Press Movants respectfully request that the Court grant their motion to intervene and promptly unseal the Search Warrant Records.

Dated: August 26, 2025          Respectfully submitted,

BALLARD SPAHR LLP

/s/ *Maxwell S. Mishkin*
Maxwell S. Mishkin (D. Md. Bar No. 20650)
Charles D. Tobin (D. Md. Bar No. 15919)
1909 K Street NW, 12th Floor
Washington, DC 20006
Tel: (202) 661-2200
Fax: (202) 661-2299
mishkinm@ballardspahr.com
tobinc@ballardspahr.com

*Counsel for the Press Movants*